**A. G. SCHOONMAKER CO., Inc.,**
**Plaintiff,**
**and**
**Bogue Electric Manufacturing Co.,**
**Intervenor,**

**v.**

**Stanley R. RESOR et al., Defendants.**

**Civ. A. No. 1760–70.**

United States District Court,
District of Columbia.

Sept. 24, 1970.

Alan Y. Cole and Stephen E. Moss, Cole & Groner, Washington, D. C., for plaintiff.

Thomas A. Flannery, U. S. Atty., Joseph M. Hannon, Ellen Lee Park, and Mary E. Folliard, Asst. U. S. Attys., Washington, D. C., for defendants.

Edward A. Groobert and Bennett Boskey, Washington, D. C., for intervenor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WADDY, District Judge.

On June 11, 1970, A. G. Schoonmaker Co., Inc. ("Plaintiff" hereinafter) instituted this action on a claim that Defendant public officials had acted arbitrarily, capriciously and unlawfully in respect to the purported cancellation of Invitation for Bids DAAK 02–70–B–1225 ("Army Invitation" hereinafter), and issuing and purporting to act on Invitation for Bids DAAK 02–70–B–3125 ("New Army Invitation" hereinafter), seeking declaratory and injunctive relief in essence prohibiting the award of any contract to anyone other than Plaintiff and requiring that a contract be issued under the Army Invitation to Plaintiff.

On June 12, 1970, this Court issued a Temporary Restraining Order enjoining the opening of bids on June 15; and on June 26, 1970, upon Findings of Fact and Conclusions of Law entered on that date, issued an Order and Preliminary Injunction restraining the opening of bids and the award of a contract under the New Army Invitation pending the determination of this cause.

On July 2, 1970, Bogue Electric Manufacturing Company ("Intervenor" hereinafter) filed a Motion for Leave to Intervene as a plaintiff and, by order of August 5, 1970, was permitted to intervene and to file a Complaint in this action. This Complaint seeks substantially the same relief sought by Plaintiff but claims that Intervenor, rather than Plaintiff, is entitled to be awarded a contract under the Army Invitation.

The trial of this cause commenced on August 20, 1970, pursuant to this Court's Order of June 26, 1970, expediting these proceedings, and concluded on August 21. All parties adduced testimony through witnesses and the authenticity and admissibility of a substantial portion of the documentary evidence introduced at the trial was stipulated. The parties also stipulated as to the authenticity of other documents at the outset of trial which were subsequently admitted into evidence by the Court.

Upon consideration of all of the evidence, the stipulations of the parties and the arguments and memoranda of coun-

sel for the parties, the Court makes the following:

## FINDINGS OF FACT

1. Plaintiff is a corporation with its principal place of business in the State of California.

2. Defendant Stanley R. Resor is Secretary of the Army and is authorized to conduct all of the affairs of the Department of the Army, including those of the United States Army Mobility Equipment Research and Development Center, Fort Belvoir, Virginia ("Army" hereinafter). Defendant Melvin R. Laird is Secretary of Defense and exercises direction, authority and control over the Department of Defense. Defendant Staats is Comptroller General of the United States and is charged with the control and direction of the General Accounting Office.

3. Intervenor is a corporation with its principal place of business in the State of New Jersey. Approximately ninety percent of its business is with the Government. Mr. William Guttenberg is its President and has been employed by Intervenor for twenty-six years.

4. In 1968, the Department of Defense developed a program for the standardization of 15 KW through 200 KW engine-driven generator sets for the Armed Services. The Department of Defense assigned responsibility for the procurement of 15 KW and 30 KW generator sets (the "Generator Sets" hereinafter) to the Army and responsibility for the procurement of 100 KW and 200 KW sets to the Department of the Air Force ("Air Force" hereinafter).

5. This program was and is administered by the Department of Defense Project Manager—Mobile Electric Power. The Project Manager for the program is Col. J. J. Rochefort, Jr. Mr. Bart Bingham is, and at all times pertinent hereto was, the chief of the procurement branch of the Project Manager's Office. Mr. Bingham has, and at all times pertinent hereto had, responsibility for planning the procurement of the standardized generator sets with jurisdiction over both the Army and Air Force Invitations.

6. On February 18, 1969, the Army issued Solicitation No. DAAK 02–69–R–2200, constituting the first step of a two-step, formally advertised, multi-year procurement of the Generator Sets, to Plaintiff, Intervenor and numerous other companies. Plaintiff and Intervenor devoted substantial time and effort and incurred substantial expense in developing technical proposals for the production of the Generator Sets in response to the Solicitation, and, after their respective technical proposals had been accepted by the Army, devoted substantial time and effort and incurred substantial expense in developing their respective bids in response to the Army Invitation.

7. In response to the said Solicitation, the Army received technical proposals from Intervenor, Libby Welding Company, Inc. ("Libby" hereinafter) and two other companies, as well as Plaintiff. The technical proposals of Plaintiff, Intervenor and Libby, but not those of the two other companies, were found acceptable.

8. On or about December 19, 1969, the Army issued the Army Invitation (DAAK–: 02–70–B–1225) to Plaintiff, Intervenor and Libby, as the second step of the aforesaid two-step procurement. The Army Invitation called for the production and delivery of both Pre-Production Models (for testing) and Production Models of the Generator Sets. The first unit of each of the four Pre-Production Models was required to be delivered 300 days after award of a contract and the remaining Pre-Production Models 420 days after award. The first 92 Production Models were required to be delivered 712 days after award and the balance of the Production Models over a period of approximately three to five years. The Invitation also required certain materials and components ancillary to the Pre-Production Models, data items and, in addition, possible additional Production Models to be purchased at the option of the Army. The Army In-

vitation provided that bids would be opened on February 27, 1970. After their respective technical proposals had been accepted by the Army, both Plaintiff and Intervenor devoted substantial time and effort and incurred substantial expense in developing their respective bids in response to the Army Invitation.

9. The Army Invitation provided separate and distinct pricing spaces for the Pre-Production and the Production Models of like Generator Sets. It also contained an express "NOTE", instructing bidders to include certain items of cost in the price of the Pre-Production Models only and not in the price of the Production Models. Although the Pre-Production and Production Models bear the same "MEP" and "FSN" numbers, the Army Invitation contains different descriptions for the Pre-Production Models than the Production Models; provides that only the Pre-Production Models are to be equipped with certain testing equipment, including regulator-exciter systems, slip rings and brush assemblies; and different rules governing how they are to be built. Mr. Edward Prada, Chief of the Testing and Evaluation Division of the Army and Program Manager for the Army's generator set program, acknowledged that the Pre-Production Models are different in some ways from Production Models of the Generator Sets.

10. On January 6, 1970, the Army held a conference of bidders "for the purpose of clarification of any and all questions regarding any contractual aspect" of the Army Invitation. Prior to the conference bidders were informed that " * * * Bidders must submit their questions in writing to arrive preferably COB 31 Dec 69 but shall arrive NLT 0900 5 Jan 70. Any changes resulting from questions and answers at this briefing that materially effect this solicitation, will be incorporated in writing into this IFB prior to the closing date of the IFB." Representatives of Plaintiff, Intervenor, Libby, the Army and the Department of Defense were present. None of the representatives raised any question concerning the pricing requirements under the Army Invitation. Nothing was said or done during this conference which indicated that the Army believed or desired that the prices for the Pre-Production and the Production Models be identical or that it would consider different prices for the Pre-Production and Production Models to be non-responsive to the Army Invitation. No changes resulting from questions and answers submitted to the conference were incorporated in writing into the IFB.

11. On January 30, 1970, the Air Force issued Invitation for Bids F 04606–70–B–0162 ("Air Force Invitation" hereinafter). The Air Force Invitation called for specified quantities of 100 and 200 KW generator sets, including Pre-Production and Production Models. Unlike the Army Invitation, the Air Force Invitation made no provision for the insertion of different prices for the Pre-Production and Production Models of like generator sets.

12. On February 5 and 6, 1970, Intervenor and Plaintiff submitted written questions to the Air Force to be answered at a conference of bidders to be held by the Air Force on February 10, 1970, in connection with the Air Force Invitation. One of the questions Plaintiff submitted was as follows: "Where do we put the price for first article generator sets? We request separate line items for first article costs be established for uniform DOD procurements. Reference: DAAK–: 2–70–1225 Correction DAAK 02–1225", which was the Army Invitation. Intervenor submitted the following similar question: It would appear that more equitable proposals could be prepared by the bidders if the pre-production equipment were separate contract items." By requesting separate line items in the Air Force Invitation, Plaintiff and Intervenor were requesting that bidders be given an opportunity to price Air Force pre-production models (first articles) differently than production models so that pre-production costs could be recaptured earlier in the con-

tract period; and the import of these questions was plain to persons familiar with the contractual aspects of invitations for bids, including Mr. Bingham.

13. On February 9, 1970, the day preceding the Air Force Conference, Mr. Bingham and representatives of the Air Force developed answers to the questions submitted by bidders, including the questions submitted by Plaintiff and Intervenor.

14. The Air Force bidders conference on February 10, 1970, was attended by representatives of four bidders including Plaintiff and Intervenor. The Army was represented by Messrs. Prada and Clarence Guthrie and the Department of Defense was represented by Mr. Bingham, and Messrs. Frank Perka, James Gale and Joseph Sullivan. Mr. Bingham was seated at the head table alongside of Jack Metz, the Air Force Contracting Officer. Mr. Daniels, representing Plaintiff, sat next to Mr. Guttenberg at the far end of the table. At the outset of the conference, representatives of bidders were requested to identify themselves. Messrs. Daniels and Caldwell indicated they were present on behalf of Plaintiff. The Department of Defense, the Army and Intervenor knew that Plaintiff was represented at the conference and that Mr. Daniels participated in the conference on behalf of Plaintiff.

15. During the course of the Air Force conference, the questions and answers referred to in Findings of Fact Nos. 12 and 13 were read by the Air Force. Mr. Daniels indicated that the former of these questions had been submitted by Plaintiff and he attempted unsuccessfully to persuade the Air Force to alter its Invitation so as to permit separate and different prices for the Pre-Production Models as distinct from the Production Models as the Army was permitting. The Air Force Contracting Officer represented that the Armed Services Procurement Regulations (ASPR) precluded the Air Force from pricing the units differently. Plaintiff also asked other questions and made statements indicating that it read and was acting upon the Army Invitation as permitting different prices for the Pre-Production and the Production Models of like Generator Sets. At no time did the Army, the Department of Defense or Intervenor indicate that any of them read or was acting upon the Army Invitation differently than Plaintiff and statements were made after consultation between Mr. Bingham, representing the Department of Defense, and Air Force Contracting Officer Metz which indicated that the Army and the Air Force differed in their interpretations of the Armed Services Procurement Regulations and the method of issuing Invitations for Bids.

16. Written minutes of the Air Force bidders conference, including the question of Plaintiff and Intervenor, were distributed by the Air Force to all attendees a few days following the conference. Plaintiff received its copy on February 20, 1970; Intervenor, on February 24, 1970; and a copy of the minutes were attached to a report on the conference, dated February 19, 1970, submitted to Col. Rochefort. A copy was also sent to the Army prior to February 27, 1970, and the Army contracting officer and the Air Force contracting officer discussed Plaintiff's "interpretation and potential bid on the Army IFB, at length." (P.Ex. 13, p. 3).

17. Armed Services Procurement Regulation 2–208(c), reiterated in Paragraph 3 of the Invitation, provides that "any information given to a prospective bidder concerning an invitation shall be furnished promptly to all other prospective bidders, as an amendment to the invitation * * * if such information is necessary to the bidders in submitting bids * * *." ASPR 2–211(b) provides that "Such personnel shall not furnish any information to a potential supplier which alone or together with other information may afford him an advantage over others." ASPR 3.504.2 provides that "All prospective offerors shall be furnished identical information in connection with the proposed procurement."

18. On February 16, 1970, in a telephone conversation initiated by Intervenor, the Army in effect advised Bogue that the Army would interpret the Invitation as requiring identical prices for the Pre-Production and the Production Models of like Generator Sets and Bogue complained that this would constitute a hardship to it. "During this telephone conversation, Mr. Guttenberg also stated that this question has come up at an Air Force bidder's conference * * * on 10 February 1970." On February 18, 1970, in response to a telegram from Intervenor, the Army stated in a telegram to Bogue that "IT IS NECESSARY THAT PRICING FOR LIKE ITEMS/IDENTIFIED BY FSN/BE THE SAME." The Army had the telephone conversation only with Intervenor. Notwithstanding the ASPR mentioned in Finding of Fact No. 17, the Army did not communicate this information to Plaintiff or to Libby. Nor did the Army incorporate this information into a written amendment to the Invitation.

19. The Court finds that on February 16, 1970, and at all times pertinent thereafter, the Army, the Department of Defense and Intervenor knew that Plaintiff was interpreting the Army Invitation as permitting different prices for Pre-Production Models and Production Models of like Generator sets. Nevertheless, at no time was Plaintiff advised or put on notice that the Army and Department of Defense interpreted the Army Invitation as requiring that identical prices be bid for the Pre-Production and Production Models of like Generator Sets.

20. Plaintiff submitted a bid in response to the Army Invitation in which there were different prices for the Pre-Production and the Production Models of like Generator Sets.

21. On February 27, 1970, the Army opened the bids which had been submitted in response to the Invitation by Plaintiff, Intervenor and Libby. Plaintiff was represented by Mr. James Blackaller, Jr. and Intervenor was represented by Mr. Guttenberg and two other persons. The bid submitted by Libby was read first; the bid submitted by Plaintiff was read second and the bid submitted by Intervenor was read last. During the reading of Plaintiff's bid, Mr. Guttenberg stated that Plaintiff's bid was non-responsive to the Army Invitation. After all bids had been read, Mr. Guttenberg advised the Army that he believed that Plaintiff's bid was non-responsive and inquired what the Army proposed to do. The Army advised that it would evaluate the situation. Thereafter, Mr. Guttenberg stated to Mr. Blackaller that Plaintiff "was the apparent low bidder but that it wasn't over yet."

22. Based upon the evaluation formula set forth in the Invitation, the evaluated bids submitted in response to the Invitation were as follows:

| Plaintiff | $31,705,988.00 |
|---|---|
| Intervenor | 32,275,784.00 |
| Libby | 39,704,470.47 |

Plaintiff's bid was the lowest of the three bids. It was lower than the next low bid, that submitted by Intervenor, by $569,796.00. ASPR 2–404.1(a) expressly provide that "the preservation of the integrity of competitive bid system dictates that after bids have been opened, an award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation."

23. On the afternoon of February 27, 1970, a few hours after the bid opening, Intervenor filed a protest with Defendant Staats against the award of a contract to Plaintiff. The ground given in support of the protest was that Plaintiff's bid was non-responsive to the requirements of the Invitation by reason of Plaintiff's failure to price the Pre-Production Models identically with Production Models of like Generator Sets.

24. After learning of Intervenor's protest, on March 4, 1970, Plaintiff notified Defendant Staats that it would protest the award of a contract to any bidder other than itself and requested the

opportunity to present its position on Intervenor's protest.

25. On March 11, 1970, Intervenor filed with Defendant Staats detailed information and grounds in support of its protest. This letter made absolutely no mention of the exchange of telegrams between Intervenor and the Army referred to in Finding of Fact No. 18. Defendant Staats first learned of this exchange of telegrams and of the information which the Army had provided to Intervenor when Intervenor attached copies of the telegrams to a submission to him on April 6, 1970, nearly two months after Intervenor had filed its protest. Plaintiff did not learn of the exchange of telegrams or of the information which the Army had provided to Intervenor until shortly before Defendant Staats rendered his decision on Intervenor's protest.

26. On March 11 and April 6, 7 and 28, 1970 Intervenor filed written submissions with Defendant Staats in support of its protest. In none of these submissions did Intervenor claim that it was prejudiced by receiving the Army's interpretation of the pricing provisions of the Army Invitation nor did it maintain that it would have altered its bid had it not received this information.

27. On April 10, 1970, F. X. McKenna, Assistant General Counsel, United States Army Material Command, transmitted to Defendant Staats the Administrative Report of the Army's Contracting Officer and a Legal Memorandum setting forth the Army's position on Intervenor's protest. The aforesaid Legal Memorandum stated that except for the fact that Plaintiff's bid contained different prices for Pre-Production Models and Production Models of like Generator Sets, Plaintiff's "bid was deemed acceptable by the Contracting Officer and is the low bid * * *." Mr. McKenna advised Defendant Staats that, in the Army's view, the Invitation required that Pre-Production Models and Production Models of like Generator Sets "be priced the same" and that the Contracting Officer had found Plain-

tiff's bid to be non-responsive to the Invitation and recommended a contract be awarded to Bogue. The Army therefore requested Defendant Staats to "approve the determination that [Plaintiff's] bid is non-responsive and permit the Contracting Officers to make an award to Bogue."

28. Mr. McKenna's letter to Defendant Staats, the Legal Memorandum of the Army, and the Contracting Officer's Administrative Report made no mention whatsoever of the information which the Army had privately furnished to Intervenor. ASPR 2–407.8(a) (2) provides that in connection with a protest filed with the Comptroller General that the Comptroller General be provided any documents, evidence or information "relevant to" or "deemed necessary in determining the validity of the protest."

29. On May 22, 1970, Defendant Staats issued a decision to Defendant Resor on Intervenor's protest. In his decision, Defendant Staats advised Defendant Resor that Plaintiff's "bid was responsive to the terms of the invitation as written" and that the Army's interpretation "strains the meaning of the" Army Invitation and "was clearly erroneous." However, Defendant Staats also advised Defendant Resor that "Bogue had been prejudiced" by the receipt of the Army's interpretation of the pricing provisions of the Army Invitation and directed Defendant Resor to cancel the Army Invitation and solicit new bids from Plaintiff Bogue, and Libby.

30. On May 23, 1970, Plaintiff, by telegram, requested the Comptroller General to reconsider that portion of his decision of May 22 which concluded that the Army Invitation must be cancelled and bids resolicited. On June 23, 1970, the Defendant Staats affirmed the previous decision.

31. On May 27, 1970, the Army, acting pursuant to the direction of Defendant Staats in his decision of May 22, 1970, cancelled the Army Invitation and issued the New Army Invitation. The New Army Invitation is substantially

identical to the Army Invitation, except that it expressly requires identical prices for Pre-Production and Production Models of like Generator Sets. The delivery schedule in the New Army Invitation is identical to the delivery schedule in the Army Invitation. The New Army Invitation originally established the date for the opening of bids as June 8, 1970, but this was later changed to June 15, 1970.

32. The providing of the information by the Army solely to Intervenor and its failure also to provide the information to Plaintiff and Libby or to incorporate the information in an amendment to the Army Invitation afforded Intervenor a unique competitive opportunity and advantage over other bidders including Plaintiff. It gave Intervenor an election denied to all others upon the opening of bids on the Army Invitation. If Intervenor were the low bidder, it would be in a position where it would not have to disclose its *ex parte* communications with the Army and thus obtain an award of a contract under the Army Invitation. Since no other bidder was aware of the fact that Intervenor had received this private information, no other bidder could have raised it as a ground for protest. On the other hand, if Intervenor were not the low bidder, Intervenor would be in an already established position to protest with the claim that Plaintiff's bid was non-responsive, upon the basis of the Army's *ex parte* interpretation of the Army Invitation. It would also have obtained knowledge of the amounts bid by others which knowledge would be useful in any resolicitation of bids.

33. The bidding and procurement processes and procedures of the Government would be irreparably damaged and their integrity destroyed if any bidder were permitted to obtain any special advantage or favored competitive position over other bidders by *ex parte* or other unfair communications with the Government, or if the Government does not maintain the actuality and also the appearance of impartiality and objectivity in administering its procurement activities and functions.

34. The Department of Defense and the Army have made a survey of Plaintiff's plant and facilities and have determined that Plaintiff was a responsible bidder with the financial, technical and manufacturing capability to produce the Generator Sets required by the Army Invitation. The Army has determined that except for the fact that Plaintiff bid different prices for the Pre-Production Models and Production Models of like Generator Sets, Plaintiff's bid was "deemed acceptable by the Contracting Officer and is the low bid."

35. This Court finds from all of the evidence that Plaintiff is a responsible bidder; its bid to the Army Invitation was the low bid, and that said bid was responsive to the Army Invitation.

On the basis of the foregoing, the Court makes the following:

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of and the parties to this action. 28 U.S.C. §§ 1331, 1361, 2201 and 2202; Title 11, District of Columbia Code, § 521(a) (1967 ed.); Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702. There is now existing between the parties an actual and justiciable controversy in respect of which Plaintiff requires judicial relief.

2. Plaintiff has standing to maintain this action. Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970); Superior Oil Company v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115 (1969).

3. This action is not barred by the doctrine of sovereign immunity. Scanwell Laboratories, Inc. v. Shaffer, *supra*.

4. Plaintiff's bid to the Army Invitation for Bids DAAK 02–70–B–1225 was responsive to the terms of the invitation.

5. The Army's *ex parte* communications with Intervenor, together with its failure to supply the other eligi-

ble bidders, including Plaintiff, with the same information given to Intervenor, and its failure to incorporate said information as an amendment to the invitation constituted a violation of Armed Services Procurement Regulations 2–208 (c), 2–211(b), 3.504.2, and Paragraph 3 of the Army Invitation and undermined the integrity of the competitive bidding process. Cf. Superior Oil Co. v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115 (1969).

6. As between Plaintiff and Intervenor, Intervenor may not rely upon nor claim prejudice from *ex parte* information supplied to it by the Army in violation of the Armed Services Procurement Regulations and the terms of the Army Invitation.

7. The cancellation of the Army Invitation by Defendants was arbitrary, capricious and unlawful.

8. The issuance of the New Army Invitation was not authorized by law and was arbitrary, capricious and unlawful.

9. The New Army Invitation was and is invalid, null and void. Any bids received or submitted at any time in relation or in response to the New Army Invitation may not be opened by Defendants, but must be promptly returned to each bidder.

10. Defendants have a duty under the circumstances of this case to award the contract under the Army Invitation to the responsible bidder who submitted the lowest responsive bid to the Army Invitation.

11. Plaintiff was a responsible bidder and the responsible bidder who submitted the lowest responsive bid to the Army Invitation.

12. Intervenor was not the bidder who submitted the lowest responsive bid to the Army Invitation.

13. Plaintiff will be irreparably injured unless Defendants are permanently enjoined from awarding and issuing a contract to anyone other than Plaintiff.

14. Plaintiff will be irreparably injured unless Defendants are required to conform to applicable law, and award and issue the contract to it.

15. Plaintiff does not have an adequate remedy at law.

16. The public interest, particularly in the integrity of the bidding and procurement processes and procedures of the Government, militates in favor of the granting of a permanent injunction against the award of the contract to anyone other than Plaintiff and also the granting of a mandatory injunction requiring the award of the contract to Plaintiff.

17. Intervenor's complaint should be dismissed.

18. According full and proper weight to all pertinent factors and considerations, and in balancing the equities, this Court has concluded that a permanent injunction enjoining the award of the contract to anyone other than Plaintiff, and a mandatory injunction requiring the award of the contract to Plaintiff, should be granted.

## JUDGMENT

Upon the grounds set forth in the Findings of Fact and Conclusions of Law filed herewith, and the Court being fully advised in the premises and having determined that a permanent prohibitory injunction should issue restraining Defendants from awarding or issuing a contract under Invitation DAAK 02–70–B–1225 to anyone other than Plaintiff, and that a mandatory injunction should issue requiring Defendants to issue to, and execute with, Plaintiff the contract under Invitation DAAK 02–70–B–1225.

Now, therefore, it is this 24th day of September, 1970, ordered, adjudged and decreed, That each and all of the Defendants and each and all of their agents, servants, employees and attorneys and those acting in concert or participation with any of them, be, and they are hereby, permanently restrained and enjoined from, directly or indirectly:

(a) issuing to or executing a contract under Invitation DAAK 02–70–

B–1225 to anyone other than Plaintiff;

(b) opening any bids, received or submitted at any time in relation or response to Invitation for Bids DAAK 02–70–B–3125 or taking any other steps, directly or indirectly, to implement, effectuate or in any other way carry out the said Invitation for Bids; and

(c) failing or refusing to return to each bidder any bid which each bidder submitted at any time in relation or response to Invitation for Bids DAAK 02–70–B–3125; and it is further

Ordered, adjudged and decreed That Defendants shall issue to and execute with Plaintiff the contract under Invitation for Bids DAAK 02–70–B–1225; and it is further

Ordered, adjudged and decreed That the Complaint of Intervenor, Bogue Electric Manufacturing Company, be, and it is hereby, dismissed; and it is further

Ordered, adjudged and decreed That a copy of this Judgment be served by the United States Marshal on each of the Defendants forthwith.