**BLACKHAWK HEATING & PLUMBING CO., Appellant,**

v.

**William B. DRIVER et al.**

**No. 22956.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 3, 1969.

Decided May 19, 1970.

22. See text *supra* at note 21.

Mr. Michael W. J. Shea, Washington, D. C., with whom Mr. Sheldon I. Cohen, Washington, D. C., was on the brief, for appellant. Mr. Henry J. Staudinger, Washington, D. C., also entered an appearance for appellant.

Mr. Michael C. Farrar, Atty., Department of Justice, for appellees. Thomas A. Flannery, U. S. Atty., Alan S. Rosenthal and Reed Johnston, Jr., Attys.,

Department of Justice, were on the brief, for appellees.

Before BAZELON, Chief Judge, and TAMM and MacKINNON, Circuit Judges.

TAMM, Circuit Judge:

In the summer of 1968 appellant was invited to submit a bid for the construction of a Veterans Administration hospital in Tampa, Florida. When the bids were opened on October 1, 1968, appellant's was the lowest in amount of the five bids received. (Supp.App. 25.) Pursuant to the Federal Procurement Regulations, an assessment of responsibility was undertaken prior to the awarding of the contract.[1] After completing a careful analysis of appellant's contract responsibility, the contracting officer determined that, under the requirements of the Federal Procurement Regulations and the Veterans Administration Procurement Regulations, appellant was not a responsible prospective contractor; on October 9, 1968, the Veterans Administration advised appellant by telegram that its bid had been rejected. (Brief for the Appellees at 10–11.)

On October 21, 1968, appellant filed suit in the district court in which it sought a temporary restraining order, preliminary, prohibitory and mandatory injunctions, and a declaratory judgment which would have had the cumulative effect of giving the construction contract to Blackhawk and of requiring that all of its future bids be fairly considered. (App. 1–19.) Appellees moved to dismiss the complaint for lack of jurisdiction on the grounds of sovereign immunity and plaintiff's lack of standing to sue. (App. 46.) On January 23, 1969, the district court, in a written opinion, granted appellees' motion to dismiss and denied appellant's motion for a preliminary injunction. Blackhawk Heating & Plumbing Co. v. Driver, 297 F.Supp. 1295 (D.D.C.1969). This appeal followed.

The stated grounds for dismissal present us squarely with the question of whether appellant herein should be deemed to have standing to sue under the circumstances of this case and the criteria stated in our recent decisions in Scanwell Laboratories, Inc.

---

1. Pertinent provisions of Title 41 of the Code of Federal Regulations prescribe the "policy and procedures governing executive agencies in *determining before award, whether prospective contractors* for furnishing the Government supplies or non-personal services (including construction) *qualify as responsible.*" 41 C.F.R. § 1–1.310–1 (1970) (emphasis added).

Section 1–1.310–2 states that:
The award of contracts to bidders who are not responsible is a disservice to the Government. * * * It is essential, therefore, that precautions be taken to award contracts only to reliable and capable bidders who can reasonably be expected to comply with contract requirements.

The regulations assist the contracting officer in making the determination of responsibility by providing that "[a] 'responsible prospective contractor' is one which is found by the contracting officer to meet the minimum standards set forth in § 1–1.310–5 and such additional standards as may be prescribed for specific procurements by the agency concerned." 41 C.F.R. § 1–1.310–4 (1970).

The pertinent standards set forth in § 1–1.310–5(a) for the guidance of the contracting officer in making the determination of responsibility include:
[A] prospective contractor must, in the opinion of the contracting officer * * *:
(1) [have] adequate financial resources for performance * * *;
(2) [have] the necessary experience, organization, technical qualifications, skills, and facilities * *;
(3) [be] able to comply with the proposed or required time of delivery or performance schedule;
(4) [have] *a satisfactory record of integrity, judgment, and performance (contractors which are seriously delinquent in current contract performance,* considering the number of contracts and the extent of delinquencies of each, *shall in the absence of evidence to the contrary* or compelling circumstances, *be presumed to be unable to fulfill this requirement).* [Emphasis added.]

v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970) and Ballerina Pen Co. v. Kunzig, 140 U.S.App.D.C. ——, 433 F. 2d 1204 (1970), and under the Supreme Court's recent statements in Association of Data Processing Serv. Organizations, Inc. v. Camp, 397 U.S. 150, 90 S. Ct. 827, 25 L.Ed.2d 184 (1970), and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Those cases clearly indicate that the question of standing is a preliminary matter which does not go to the merits of the case. In rejecting the "legal interest" test in *Data Processing*, the Court noted: "The 'legal interest' test goes to the merits. The question of standing is different." 397 U.S. at 153, 90 S.Ct. at 830. The Court had previously enunciated this distinction in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), in which it was said:

> Despite the complexities and uncertainties, some meaningful form can be given to the jurisdictional limitations placed on federal court power by the concept of standing. *The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.*

392 U.S. at 99, 88 S.Ct. at 1952 (emphasis added.)

■■■ The criteria for standing which were enumerated in the above cases indicate that a party aggrieved in fact by agency action has standing to challenge that action, even in the absence of "person aggrieved" language in the statute under which the agency action is taken, if he is able to demonstrate injury in fact, if he is able to show that the interest he asserts is "arguably" within the zone of interests the statute seeks to protect, and if a perusal of the statute reveals no legislative intent that judicial review should be withheld. *Data Processing, supra,* 397 U.S. 150, 90 S.Ct. 827; *Scanwell Laboratories, supra,* 137 U.S.App.D.C., at 378, 381 n. 10, 381, 384, 424 F.2d at 866, 869 n. 10, 869, 872; *Ballerina Pen Co., supra,* 433 F.2d at 1204; *Barlow, supra,* 397 U.S. 159, 90 S.Ct. 832; Lodge 1858, Am. Fed'n of Gov't Employees v. Paine, No. 22,006 (D.C.Cir. April 21, 1970) (concurring opinion at 32). Application of those criteria to the present case compels the conclusion that appellant has standing to challenge the instant agency action. As we held in *Scanwell Laboratories* and *Ballerina*, one who alleges that an agency has acted arbitrarily or in excess of its authority in denying him a government contract is a proper party to "satisfy the public interest in having agencies follow the regulations which control government contracting." *Scanwell Laboratories, supra,* 137 U.S.App.D.C. at 376, 424 F.2d at 864. It was stated that one who could demonstrate that the government had abused its discretion in contracting would be permitted to sue in the district court to vindicate the public interest as a "private attorney general"[2] under section 10 of the Administrative Procedure Act.[3] The decision of the district court must therefore be reversed to the extent that

---

2. *Scanwell Laboratories, supra,* 137 U.S. App.D.C. at 376, 424 F.2d at 864. We noted that "the public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a 'private attorney general.'" *Id.* at 376, 424 F.2d at 864. This theory was recognized by the Supreme Court in *Data Processing, supra,* wherein the Court said that "[c]ertainly he who is 'likely to be financially' injured * * * *may be a reliable private attorney general to litigate the issues of the public interest in the present case.*" 397 U.S. at 154, 90 S.Ct. at 830 (Emphasis added.)

3. Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (Supp. IV 1965–68), provides:
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

it holds that Blackhawk has no standing to sue.

## II

■ Fortunately, the inquiry does not end with a determination that the plaintiff has standing; rather, the inquiry begins in more relevant detail at that point. As we noted in *Scanwell Laboratories* and *Ballerina,* the mere fact that a party has standing to sue does not entitle him to render uncertain for a prolonged period of time government contracts which are vital to the functions performed by the sovereign.[4] The recent decisions in this court and in the Supreme Court have served to eliminate the artificial barrier created by the concept of standing, but that does not mean that the traditional legitimate bars to frivolous lawsuits have also been abrogated.

Rather than denying access to the courts to all litigants who make claims of arbitrary and capricious agency action on the ground that there will be unmeritorious suits from time to time—a process which also has the effect of barring plaintiffs who have legitimate grievances—we have determined that considerations of standing have nothing to do with the merits of the controversy and that the summary judgment procedure contemplated by Rule 56 of the Federal Rules of Civil Procedure will serve admirably to eliminate the frivolous lawsuits which might occasionally arise. Subsection (c) of that rule provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no*

*genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law." (Emphasis added.) As Judge, later Justice, Cardozo has stated:

> The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial.

Richard v. Credit Suisse, 242 N.Y. 346, 350, 152 N.E. 110, 111 (1926).

■■ It has been held many times that this objective is attainable when a party is able to pierce the pleadings and show through the documents before the court that there are no genuine issues of material fact to be tried. *See* Scarboro v. Universal C.I.T. Credit Corp., 364 F.2d 10, 15 (5th Cir. 1966); Gauck v. Meleski, 346 F.2d 433 (5th Cir. 1965). We have held in this circuit that summary judgment may be granted if there are no genuine issues of material fact even though such issues are technically and formally raised in the pleadings. Richardson v. Rivers, 118 U.S.App.D.C. 333, 335 F.2d 996 (1964). As we said in the leading case of Dewey v. Clark, 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772 (1950):

> There may be no genuine issue even though there is a formal issue. Neither a purely formal denial nor, in every case, general allegations, defeat summary judgment. * * * [F]ormalism is not a substitute for the necessity of a real or genuine issue. Whether the situation falls into the

---

4. This concern was stated in *Scanwell Laboratories* as follows: "Of course it is true that the grant of standing must be carefully controlled by the exercise of judicial discretion in order that completely frivolous lawsuits will be averted." (137 U.S.App.D.C. at 384, 424 F.2d at 872.) While the Supreme Court's more recent statements appear to reduce substantially the discretionary aspects of the standing doctrine, our concern that frivolous law-

suits be averted remains as serious as it was when *Scanwell* was written. Evidence of this continuing concern is found in our opinion in *Ballerina,* in which we stated: "[I]t is of course necessary that there exist adequate safeguards to insure that there will be no incursion of frivolous lawsuits which will flood the courts with unnecessary litigation. * * *" (433 F.2d at 1209.)

category of formalism or genuineness cannot be decided in the abstract * * *.

Due to the penetrating analysis given the current case by the learned trial judge in his decision, we need not determine these issues in the abstract.

The Federal Procurement Regulations provide the standards to be used by the contracting officer in ascertaining the responsibility of the prospective contractor (*see* note 1 *supra*.) The responsibility of the officer to make such a determination is clearly set forth at 41 C.F.R. § 1—1.310—6(a) (1970):

> No contract shall be awarded to any person or firm unless the contracting officer has first determined that such person or firm is responsible within the meaning of §§ 1—1.310—4 and 1—1.310—5. The signing of a contract shall be deemed to be a certification by the contracting officer that he has determined that the prospective contractor is responsible with respect to that contract.[5]

In carrying out the mandate of the regulations, the contracting officer in this case made a thorough review of appellant's past performance on previous government construction contracts.[6] On the basis of the affidavits and authenticated documents filed by appellees in support of their motion to dismiss below, the district judge determined that the contracting officer had acted within the scope of his statutory powers and that he had not acted arbitrarily or capriciously in declaring appellant a non-responsible prospective contractor. *Blackhawk, supra,* 297 F.Supp. at 1298–1299.

In response to appellant's argument that the contracting officer had violated the requirements of 41 C.F.R. § 1—1.310—7 (1970) (see note 6 *supra*), the district court relied on the following statements contained in affidavits filed in the case:[7]

A. Mr. R. M. Farrar, project director on three construction projects on which Blackhawk was the contractor, stated that Blackhawk's performance on all three had been unsatisfactory, and that it had been necessary to terminate the contract for the air conditioning of the VA hospital in Manhattan, New York, on October 1, 1968, the day the bids were opened for the Tampa hospital. (Supp.App. 29–30.)[8]

---

5. These regulations have the force and effect of law. Farmer v. Philadelphia Elec. Co., 329 F.2d 3, 7 (3d Cir. 1964).

6. The regulations provide that the contracting officer shall have available to him sufficient evidence upon which to make his determination of responsibility:

    *Before making a determination of responsibility, the contracting officer shall have sufficient current information to satisfy himself that the prospective contractor meets the standards in § 1—1.310—5.* Information from the following sources should be utilized before considering making a pre-award on-site evaluation:

    (a) Information from the prospective contractor * * *.

    (b) *Other existing information within the agency, including* financial data, the list of debarred and ineligible bidders * * *, and *records concerning contractor performance.*

    (c) Publications, including credit ratings and trade or financial journals.

    (d) *Other sources, including* banks, other financial companies, and *Government departments and agencies.*
    41 C.F.R. § 1–1.310–7 (1970) (emphasis added).

7. Authority for reliance on the affidavits and authenticated documents submitted by appellees is found in Friend v. Lee, 95 U.S.App.D.C. 224, 226 n. 1, 221 F.2d 96, 98–99 n. 1 (1955).

8. In summarizing Blackhawk's performance Mr. Farrar stated:

    * * * I have found that this contractor is most uncooperative and seems prone to question anything and everything concerning the contract documents and requirements. * * * As Construction Contracting Officer, I have found it necessary to resort to unilateral actions [recommending changes] on all three projects. Even when proposals [have been] received from the contractor it has been noted that * * * nearly all proposals are grossly inflated

B. Mr. W. A. Salmond, project director on the Brooklyn, New York, air conditioning project, concluded his report to the contracting officer in this case by noting that "[t]he actions outlined above do not appear to be those of a responsible contractor." (Supp. App. 34.)

C. Mr. Herbert L. Dean, project director for a hospital building and modernization project in Northport, New York, reported that Blackhawk was invariably behind schedule, failed to meet contract requirements, violated safety requirements, and created an abnormally large administrative burden. It was also noted that two of Blackhawk's subcontractors defaulted on this project and, as the *coup de grace*, the report stated that the Senior Resident Engineer had reported that steel dowels were missing from 29 columns and that an apparent attempt to hide this fact was effected by placing short dowels, secured only with mortar, in place of the normal steel dowels. (Supp.App. 36–38.)

Pursuant to 41 C.F.R. § 1—1.310—7(d) (1970) (*see* note 6 *supra*), the contracting officer also sought information concerning appellant's prior performance on contracts entered into with other government agencies. The Department of the Army noted that it had encountered some fifty-six change orders in the two contracts it had had with Blackhawk and that on both contracts Blackhawk had received unsatisfactory ratings for "Management and Efficiency." (Supp. App. 91–92.) The General Services Administration also reported an unsatisfactory relationship with appellant on a contract for the air conditioning of a

Federal Building in Chicago. (Supp. App. 96; Brief for the Appellees, Addendum B at 10a–11a.)

On the basis of this rather exhaustive evidence of unsatisfactory prior conduct on the part of appellant the contracting officer determined that:

In view of the above and a review of other files * * * *it is my decision that this contractor is not "a responsible prospective contractor" under the terms and definitions as set forth in the Federal Procurement Regulations and consequently does not qualify for the award of the contract* for the new Tampa Hospital on which [it] was the low bidder as of October 1, 1968.

(Supp.App. 26–27; emphasis added.)

▮ Appellant alleges that it suffered "legal wrong" at the hands of the appellees by virtue of the fact that Blackhawk was not itself requested to give information under 41 C.F.R. § 1—1.310—7 (a) (1970) (*see* note 6 *supra*). The various parts of that regulation are designed to meet the needs of the contracting officer in securing different kinds of information in order to make his determination as to the responsibility of the prospective contractor; while it may well be that the contracting officer "should" utilize information from the bidder as to certain qualification criteria, such as financial resources, experience, organization, skills, facilities, technical qualifications, and delivery capabilities pursuant to subsections 1 to 3 of section 1—1.310—5(a), it should be obvious that more appropriate information going to the fourth standard under that section—the record of integrity, judgment and past performance—will be more realistically acquired from the sources enumerated in subsections (b) and (d) of section 1—1.310—7, those sources being information within the

with regard to labor costs. In many cases * * * the contractor appeals the final decisions and waits until just prior to appearing before the Appeals Board before attempting to resolve the differences of opinion between himself

and the VA as to what constitutes a fair and equitable settlement.
* * * *I consider the performance of this contractor to be unsatisfactory on all three projects.*
(Supp.App. 30–31; emphasis added.)

agency concerning contractor performance and "[o]ther sources, including * * * Government departments and agencies." We agree with the district court's analysis of this allegation:

There is nothing in § 1—1.310—7 which required the contracting officer to seek information from all sources named, including plaintiff. If the section were to be read as plaintiff asserts [then] the contracting officer would be required to contact banks and other financial companies as well as to review publications * * *. What the contracting officer wanted to learn was plaintiff's performance record on prior Government jobs. That information was available to Government agencies through their experience * * * [and was] utilized * * * in considering plaintiff's responsibility.

*Blackhawk, supra,* 297 F.Supp. at 1298.

█ The foregoing analysis should make it abundantly clear that the questions presented in this case raised no genuine issues of material fact, but merely presented legal issues appropriate for summary resolution by the trial judge. As the opinion of the district court so clearly states:

In its memorandum in opposition to defendants' motion to dismiss plaintiff asserts that its complaint alleges facts which when proven "will show that defendants had through conspiracy, malice and coercion abused their discretion in awarding the contract" * * *. *A reading of the complaint shows no such facts alleged.* * * *

* * * [N]either expressly nor implicitly does the complaint allege facts that defendant Robinson, the contracting officer, acted through bias or prejudice or coercion. In fact the complaint asserts that Robinson's acts were those of the contracting officer, albeit allegedly contrary to pertinent regulations. As the contracting officer it was Robinson alone who was authorized to pass on plaintiff's responsibility. * * * As noted above Robinson acted within the scope of the applicable regulations.

*Id.* at 1300–1301.

The trial judge therefore determined that there were no genuine issues of material fact, and that as a matter of law the contracting officer had done all that was required in making the determination that Blackhawk was not a responsible prospective contractor. That being the case, it would have been proper for the trial judge to grant summary judgment in favor of the defendants. He did not do so because he had before him the preliminary matter of the plaintiff's standing to sue; it was not necessary to pursue other grounds for disposing of the case because he found under the prevailing standards (this case was decided in the district court thirteen months before our decision in *Scanwell Laboratories*) that Blackhawk did not have standing to sue. Our determination that that decision can no longer stand does not preclude consideration of the summary judgment procedure at this time, particularly in view of the fact that the merits of the case were briefed and argued in both the district court and the proceedings before this court.

█ The motion to dismiss for lack of standing in this case appears to come under Rule 12(b) (6), although it was not articulated as such. A 12(b) (6) motion raises "a defense in bar and involves the type of matter that is within the province of the summary judgment procedure." 6 Moore's Federal Practice ¶ 56.02 [3], at 2034 (2d ed. 1966). As with a motion to dismiss under Rule 12 (b) (6), the issues raised by appellees' "standing" defense in this case went to the merits of the controversy.[9] Such matters are well suited for resolution in the context of the summary judgment

9. Henceforth, a motion to dismiss for lack of standing will not, of course, be considered to raise a question going to the merits of the controversy, although it may still present a "defense in bar" between the parties under Rule 12(b) (6).

procedure provided there are no genuine issues as to material facts, because the court will have before it all of the relevant information in the form of depositions, answers to interrogatories, and affidavits. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." [10]

As the district court's opinion in this case makes clear, the parties filed such documents "outside the pleading" as are contemplated in the rules.[11] The court reviewed these data in great detail and concluded as a matter of law that defendants were entitled to judgment in their favor. This process has received frequent approbation in this court. *See, e. g.,* Richardson v. Rivers, 118 U.S.App. D.C. 333, 335–336, 335 F.2d 996, 998–999 (1964). The wisdom of the summary judgment procedure was eloquently stated by Circuit Judge Clark, the principal draftsman of the rule,[12] in Engl v. Aetna Life Insurance Co., 139 F.2d 469, 472 (2d Cir. 1943):

> [T]he history of the development of this procedure shows that it is intended to permit "a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried." 3 Moore's Federal Practice 3175. In New York the question of constitutionality was settled by considering the procedure as one to determine whether a defense or issue formally stated between the parties was merely sham and not bona fide. Formerly this could be deter-

mined only on the face of the pleadings; the only essentially new step was to allow such a showing to be made on the basis of detailed affidavits. The rationale was well stated in one of the leading cases * * *: Hanna v. Mitchell, 202 App.Div. 504, 518, 196 N.Y.S. 43, 55, affirmed 235 N.Y. 534, 139 N.E. 724; "To say that a false denial, which defendants are unable to justify, must nevertheless put the plaintiff to his common-law proof before a jury, although the result would be a directed verdict in plaintiff's favor as a matter of law, is to exalt the shadow above the substance." Hence we have often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment.

The motion to dismiss in this case, being in the nature of a motion to dismiss for failure to state a claim upon which relief could be granted, therefore became a motion for summary judgment under the rules. That this must necessarily follow is clearly demonstrated by the district court's statements:

> In support of defendants' motion to dismiss they have filed three affidavits and authenticated copies of a number of documents relating to plaintiff's bid and the rejection thereof.

*Blackhawk, supra,* 297 F.Supp. at 1297. Following this statement the court observed in a footnote that:

> While plaintiff filed a verified complaint and an affidavit in further verification thereof, it has not sought to present further materials in opposi-

---

10. Advisory Committee Note, 1963 Amendment to Rule 56(e), Fed.R.Civ.P., quoted in 6 Moore's Federal Practice ¶ 56.01 [14], at 2022 (2d ed. 1966).

11. Fed.R.Civ.P. 12(b) provides in pertinent part: "If, on a motion asserting the defense numbered (6) * * * matters outside the pleading are presented * * the motion shall be treated as one for

summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56."

12. *See* Wright, Rule 56(e) : A Case Study on the Need for Amending the Federal Rules, 69 Harv.L.Rev. 839, 842 (1956).

tion of [*sic*] defendants' motion to dismiss and supporting affidavits and authenticated material.

*Id.* at n.1. It is therefore clear that, although it was or should have been obvious to all concerned that the court was going to take into consideration all of the materials before it, the plaintiff chose to rely on its pleadings and the other information filed on its side of the case without entering further affidavits in opposition to the motion to dismiss. The above-quoted excerpt from *Engl* makes it clear that reliance on such "formal" and "general" allegations will not suffice to defeat a motion for summary judgment. As the Sixth Circuit noted in an early summary judgment case:

> [T]he court is not authorized under the rule to try issues of fact but it has the power to penetrate the allegations of fact in the pleadings and look to any evidential source to determine whether there is an issue of fact to be tried.
>
> * * * [W]hen [the rule] is invoked by either party to a case and a showing is made by the movant, the burden rests on the opposite party to show that he has a plausible ground for the maintenance of the cause of action alleged in his complaint, or if a defendant, that he has a ground of defense fairly arguable and of a substantial character.

Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 137 F.2d 871, 877 (6th Cir. 1943), cert. denied, 320 U.S. 800, 64 S.Ct. 431, 88 L.Ed. 483 (1944).

It being clear that plaintiff in this case had the opportunity to show that his claims were of a non-frivolous nature, we are inclined to enter summary judgment in favor of defendants. We will not do this because of the language of Rule 12(b) which states that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."[13] The opinion of the district court having revealed that

some of the documents and information contemplated by subsections (c) and (e) of Rule 56 were not tendered by plaintiff in this case, we will remand to the district court with instructions that all parties be afforded an opportunity to present the relevant information, and with further instructions that summary judgment be entered in favor of defendants unless it appears to the trial judge upon review of the information received that there is indeed a genuine issue as to a material fact.

So ordered.

---

13. *Cf.* Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971, rehearing denied, 337 U.S. 921, 69 S.Ct. 1153, 93 L.Ed. 1730 (1949).