**AMERICAN POSTAL WORKERS UNION, AFL–CIO, DETROIT LOCAL, Plaintiff-Appellant,**

v.

**INDEPENDENT POSTAL SYSTEM OF AMERICA, INC., et al., Defendants-Appellees.**

No. 72–2016.

United States Court of Appeals, Sixth Circuit.

Argued April 12, 1973.

Decided June 26, 1973.

As Amended Sept. 27, 1973.

Bernard J. Fieger, Southfield, Mich., for plaintiff-appellant; Craig, Fieger & Golden, Southfield, Mich., on brief.

P. Joseph Pascoff, Detroit, Mich., for defendants-appellees; Kerr, Wattles & Russell, by Robert G. Russell, Detroit, Mich., on brief.

Before PECK, McCREE and KENT,* Circuit Judges.

JOHN W. PECK, Circuit Judge.

The complaint herein sought a declaratory judgment, a temporary and permanent injunction and further relief relative to the operation by defendants-appellees of an operation allegedly repug-

nant to the grant of monopoly to the United States to carry and deliver mail. This appeal has been perfected from an order of the District Court granting a motion of the defendants-appellees for summary judgment, on the ground that plaintiff-appellant "lacks standing to institute this type of action."

It is alleged in the complaint, accepted for present purposes as true, that the appellant union is the duly and legally authorized representative of employees in the United States Postal Service in the Metropolitan Detroit area, and that the appellee Independent Postal System and the two individual appellees, its local agents, hold themselves out as having the authority and legal right to perform, by private contract, the delivery of mails. It is further alleged that they are operating in the State of Michigan without authority to do so, "having failed to register in any manner whatsoever to do business in said state." The action is founded on Article I, Section 8, Clause 7 of the Constitution, which confers upon the Federal Government the exclusive authority and right "to establish post offices and post roads," and upon regulatory statutes enacted pursuant to such constitutional grant. These enactments are collectively referred to as the Private Express Statute, and are codified as 18 U.S.C. §§ 1693–99 and § 1724. Section 1696 reads in pertinent part as follows:

"(a) Whoever establishes any private express for the conveyance of letters or packets, or in any manner causes or provides for the conveyance of the same by regular trips or at stated periods over any post route which is or may be established by law, or from any city, town, or place to any other city, town, or place, between which the mail is regularly carried, shall be fined not more than $500 or imprisoned not more than six months, or both."

It is to be noted in passing that a separate statute providing a means of avoid-

---

\* Honorable W. Wallace Kent died on May 27, 1973.

ance of these criminal sanctions (39 U. S.C. § 601) is without present application. It is also initially observed that the parties do not here contest that the material delivered by appellees, consisting of addressed newspapers (shopping guides) and magazines are "letters" within the meaning of the Private Express Statute.

█ Virtually the entire thrust of appellant's main brief in this court is that it had standing to maintain the action in what has come to be referred to as the "Data Processing sense." The reference is to Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) [1] wherein it was held that the data processors' association was an aggrieved party with the right under the Administrative Procedure Act to maintain an action for the review of a ruling of the Comptroller that national banks could make data processing services available to other banks and to banks' customers. Mr. Justice Douglas therein stated the standing question to be "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 830. Appellant sought to place itself within the "zone of interests" category by filing an affidavit in support of its complaint stating in part, "The threats of [appellee] to continue and to expand its illegal operations . . . imperils the liveli-

hood, careers, annuities, benefits and guaranteed employment of the postal employees we represent . . . ." We need not here reach appellees' responsive contention that appellant's loss, if any, is di minimus and that for that reason alone no standing to sue under the "zone of interests" test appears, because we agree with the District Court that that test has relevance only where the action under attack is that of a governmental agency, whereas the present suit is one between private parties. In *Data Processing*, the opinion goes to great lengths to demonstrate that the "zone of interests" test has been expansively applied, finding standing to exist where "aesthetic, conservational, and recreational" interests, as well as economic values, were endangered. 397 U.S. at 154, 90 S.Ct. 827. However, neither *Data Processing* nor any of the cases cited therein concern controversies between private parties; indeed, most arose under the Administrative Procedure Act, which a fortiori dictates the involvement of a public agency.[2]

Although *Data Processing* has been relied upon by plaintiffs in an attempt to clothe themselves with standing in actions against other private parties, another line of cases stands for the proposition that standing has not been established in such circumstances. In Solien v. Miscellaneous Drivers and Helpers Union, 440 F.2d 124 (8th Cir. 1971), the charging party in a National Labor Relations Board proceeding sought to intervene with full party status. In af-

---

1. Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), was argued and decided on the same day, and the two opinions, which stand for the same proposition and were both written by Mr. Justice Douglas, are usually cited together as authority for the doctrine enunciated.

2. Subsequent cases finding standing to exist where governmental agency action is involved include: Kodiak Airways v. C.A. B., 144 U.S.App.D.C. 371, 447 F.2d 341 (1971); National Automatic Laundry and Cleaning Council v. Shultz, 143 U.S. App.D.C. 274, 443 F.2d 689 (1971); Shannon v. United States Department of

Housing and Urban Development, 436 F. 2d 809 (3d Cir. 1970); Blackhawk Heating and Plumbing Co. v. Driver, 140 U.S. App.D.C. 31, 433 F.2d 1137 (1970).

It should be noted that cases in which an attack was made upon the constitutionality of a state law or state action by a state official and in which standing in the Data Processing sense was found to exist are obviously without application. See, e. g., Moyer v. Nelson, 324 F.Supp. 1224 (S.D.Iowa, 1971); DiCenso v. Robinson, 316 F.Supp. 112 (D.R.I.1970), aff'd, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); Crossen v. Breckenridge, 446 F. 2d 833 (6th Cir. 1971).

firming the District Court's conclusion that the charging party did not have and could not obtain the status of a full party litigant indirectly through intervention, the Court stated, "The decisions [in *Data Processing* and *Barlow*] can fairly be said to represent a trend 'toward enlargement of the class of people who may protest administrative action' where statutes are concerned. . . . Since we are concerned with the issue of whether charging parties have the right to obtain appellate review from a judicial order in a Section 10(*l*) proceeding and not the right of judicial review of administrative action, *Data Processing Service* and *Barlow* are not controlling." 440 F.2d at 132. In Colligan v. Activities Club of New York, 442 F.2d 686 (2d Cir.), cert. denied, 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971), the plaintiffs urged that they were "arguably within the zone of interests to be protected" by the Lanham Act, but the Court held that *Data Processing* "does not bring these appellants under its protective wing." 442 F.2d at 691. We conclude that in this action between private parties *Data Processing* and *Barlow* provide no basis for a determination that they possess the requisite standing to maintain this suit.

More fundamentally, perhaps, although appellants have directed little attention to this point, a serious question exists as to whether either 18 U.S.C. § 1696 or 39 U.S.C. § 601 or both provide a basis for a private right of action. Section 1696 is a criminal statute, and the general rule is that a private right of action is not maintainable under a criminal statute. "Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions." Bass Angler Sportsman's Society of America v. United States Steel, 324 F. Supp. 412, 415 (N.D.Ala.), aff'd., 447 F.2d 1305 (5th Cir. 1971). "The reasons for placing exclusive enforcement of criminal statutes in the proper governmental officials are even more applicable to enforcement of such statutes by injunction." 324 F.Supp. at 416.

In the limited areas in which private actions have been held to be maintainable under a criminal statute, the plaintiffs have been without exception clearly members of the public designed to be protected by the applicable statute. For example, although the Federal Safety Appliance Act provides criminal sanctions for noncompliance, its purpose is clearly to protect railroad employees, and private actions by employees for damages resulting from injuries caused by such noncompliance are maintainable. See, e. g., Texas and Pacific Railway Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). A private action for violation of a section of the Securities Exchange Act of 1934, which provides criminal sanctions, was permitted in J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), where the Court observed that among the chief purposes of the Act is " 'the protection of investors' which certainly implies the availability of judicial relief where necessary to achieve that result." 377 U.S. at 432, 84 S.Ct. at 1559. It cannot be seriously contended that the Private Express Statute was enacted for the protection of a class which included the postal employees or a union representing them. We hold that the Private Express Statute, which is clearly a criminal statute, can only be enforced by the proper governmental authorities and that no right of action thereunder resides in the plaintiff-appellant.

Finally, we note that our conclusion herein is contrary to that reached by the Tenth Circuit in National Association of Letter Carriers, AFL–CIO v. Independent Postal System of America, 470 F.2d 265 (10th Cir. 1972), and to that extent we respectfully decline to follow that opinion.

The judgment of the District Court is affirmed.