**Hiram B. ELY et al.**

v.

**Richard W. VELDE et al.**

**Civ. A. No. 459–70–R.**

United States District Court,
E. D. Virginia,
Richmond Division.
Jan. 22, 1971.

Emanuel Emroch, Jay G. Kauffman, Richmond, Va., for plaintiffs.

David G. Lowe, Asst. U. S. Atty., Richmond, Va., for defendants Velde & Coster.

Van H. Lefcoe, Asst. Atty. Gen., Richmond, Va., for defendant Brown.

· L. Paul Byrne, W. B. Kerkam, III, Richmond, Va., for intervenors Purcell.

## MEMORANDUM

, MERHIGE, District Judge.

The plaintiffs in the above styled action are residents of the Green Springs area of Louisa County, Virginia. They sue both as individuals and as members of the Green Springs Association, an unincorporated association. They complain of the proposed building of a Reception and Medical Center for Virginia prisoners in the Green Springs area. The complaint named as defendants Richard W. Velde and Clarence M. Coster, Associate Administrators of the Law Enforcement Assistance Administration (LEAA), which has allegedly appropriated $775,000.00 for construction of the facility, and Otis L. Brown, Director of the Department of Welfare and Institutions for the State of Virginia, under whose responsibility the Center will fall. Plaintiffs seek to permanently enjoin the allocation of the $775,000.00 and the building of the facility. The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331(a); 28 U.S.C. § 1343 (3); and 5 U.S.C. §§ 701–706.

On October 7, 1970, the Court denied a Motion to Dismiss or to Drop a Party Defendant made by defendant Brown. Thereafter, L. J. Purcell and Edith S. Purcell, his wife, the owners of the land upon which the proposed center is to be located, were permitted to intervene as parties defendant, pursuant to Fed.R. Civ.P. 24(a) (2), 28 U.S.C. The motion for a permanent injunction was then argued before the Court, and it is this motion with which the Court is now concerned.

Green Springs is an area of land consisting of approximately 10,000 acres located in the western part of Louisa County. It is a uniquely historical and architecturally significant rural community in that almost all of the homes were built in the nineteenth century and have been maintained in substantially the same condition ever since.[1] Three of the homes, Boswell's Tavern, Hawkwood, and Westend, are on the National Register for Historic Places, as provided in 16 U.S.C. § 470a(a) (1).[2]

Defendant Brown, in his official capacity, has procured from defendants Purcell an option to purchase 200 acres of land in Green Springs for the·purpose

---

[1]. The historical records of the homes and area are documented in the libraries of the University of Virginia, College of William and Mary, and the archives of the Library of Congress.

[2]. Boswell's Tavern was placed on the National Register in 1969. Hawkwood and Westend were accepted in September, 1970, after the National Trust for Historic Preservation knew of plans to locate the Reception and Medical Center in the Green Springs area. However, Russell V. Keune, Director of Field Services for the National Trust for Historic Preservation, did state that in his opinion the location of the Center in Green Springs would be the first step in the erosion of the environmental quality of the area and would cause an alteration and change in the land use and surrounding environment with increased pressure from other incompatible elements.

of erecting the Center on the site.[3] Brown stated that the decision was his alone, and he made it after consultation with his staff and architects. He further stated that there are other available sites in Virginia, but he considers this to be the best.[4]

Though the plans for the Center have not yet been finalized, Brown estimates that there will be six buildings in all. There may be a fence, and if so there will be guard towers, which could be as high as thirty feet. The facility will use approximately 40,000 gallons of water per day for the 300 to 325 inmates. In addition, there will be a one hundred bed hospital and a parking lot for 150 cars.

The State of Virginia has requested, pursuant to the Safe Streets Act, 42 U. S.C. § 3701 et seq., a block grant, of which $775,000 has been applied for by the State Department of Welfare & Institutions. Of this amount, $275,000 has been earmarked by the State of Virginia for erection of the Center. The block grant has been approved by the L.E.A. A., and the transmittal of the funds is a purely mechanical act. The location of the Center is immaterial to the L.E.A.A. in that location of such facilities is entirely a local concern. Therefore, in approving the grant, the L.E.A.A. admittedly did not consider the environmental impact of the Center on the Green Springs area.

The plaintiffs allege that defendants Velde and Coster were required to take into account the environmental impact of the Center on the Green Springs area under 16 U.S.C. § 470f.[5] They further allege that Velde and Coster also failed to issue any statement regarding the environmental impact of the facility on the Green Springs area, in violation of 42 U.S.C. § 4332(2) (C) (i).[6] The plaintiffs therefore claim that failure to act in accordance with the above mentioned statutes and the placement of the Center on the Purcell tract is in violation of the national policy and the expressed findings and declarations of the Congress as

3. The Louisa County Board of Supervisors, with the Green Springs representative's approval, by resolution, approved of the sale. They felt it would be economically beneficial to the county.

4. Some of the considerations Mr. Brown mentioned in deciding to build on the Purcell tract are that it is reasonably centrally located in that it is accessible to metropolitan areas, thereby making it easier to draw staff; the site is level for construction; it is on major highways; and it is in a place where it will not compete with other State institutions.

5. § 470f. *Effect of Federal undertakings upon property listed in the National Register; comment by Advisory Council on Historic Preservation.*
The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i–470n of this title a reasonable opportunity to comment with regard to such undertaking.
At the time of the grant in question, June 30, 1970, Boswell's Tavern, which is several miles away from the tract, was in the National Registry.

6. § 4332. *Cooperation of agencies; reports; availability of information; recommendations; international and national coordination of efforts*
The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—
(C) include in every recommendation or report on proposals for legislation and other major federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—
(i) the environmental impact of the proposed action.

contained in the Historic Preservation Act, 16 U.S.C. § 470 et seq., and the National Environmental Policy Act, 42 U.S.C. § 4321 et seq.

The plaintiffs further allege that defendant Brown could have selected a suitable site other than the one now in question, and that "because the preservation of the Green Springs area as a group of historic houses in related context, representing a century and a half of architectural development, is of great historical importance and national interest to all people of the United States, they assert a constitutional right to be protected from unnecessary and unreasonable environmental degradation and destruction by the erection of the Center in the Green Springs area," under the Ninth and Fourteenth Amendments to the Constitution of the United States.

Accordingly, the plaintiffs have asked the Court to permanently enjoin any appropriation of federal funds for the Center and to permanently enjoin construction of said Center as planned.

Defendants Velde and Coster contend that the plaintiffs have no standing to seek judicial review of the actions or non-actions of the L.E.A.A. because of 42 U.S.C.A. § 3759(a), which states:

§ 3759. Judicial review—Petition; record

(a) If any *applicant* or *grantee* is dissatisfied with the Administration's final action with respect to the approval of its application or plan submitted under this chapter, or any applicant or grantee is dissatisfied with the Administration's final action under section 3757 or section 3758 of this title, such applicant or grantee may, within sixty days after notice of such action, file with the United States court of appeals for the circuit in which such applicant or grantee is located a petition for review of that action. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Administration. The Administration shall thereupon file in the court the record of the proceedings on which the action of the Administration was based, as provided in section 2112 of Title 28 (Emphasis added).

The plaintiffs claim that although neither applicants nor recipients of federal funds under the Act, they are not precluded from seeking judicial review of the actions or non-actions of the L.E.A.A. They contend that 42 U.S.C. § 3759(a) is concerned only with the procedure by which applicants and grantees may seek judicial review, and that the statute does not purport to limit the right to judicial review by other persons, nor does the Act specifically preclude judicial review by such other persons elsewhere.[7] The plaintiffs further contend that in absence of such specific preclusion, judicial review is governed by the Administrative Procedure Act, 5 U.S.C. § 702, which states:

§ 702. Right of review

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof.

It is contended that in the instant case "relevant statutes" includes the Safe Streets Act, 42 U.S.C. § 3701 et seq., the National Historic Preservation Act, 16 U.S.C. § 470 et seq., and the National Environmental Policy Act, 42 U.S.C. §§ 4321, 4331 et seq.

█ This Court finds that the plaintiffs do have standing under 5 U.S.C. § 702 to seek judicial review of the actions of the L.E.A.A. While cases involving 5 U.S.C. § 702 generally consider the relevant statute to be the one upon which the particular agency relies for authority of its actions, the Court does not consider those cases controlling on the

7. 42 U.S.C. § 3758(a) states that determinations, findings, and conclusions are final and conclusive as to applicants, except as otherwise provided. But only applicants are mentioned in the statute.

point.[8] The Court holds that the National Historic Preservation Act, 16 U.S.C. § 470 et seq., and the National Environmental Policy Act, 42 U.S.C. §§ 4321, 4331 et seq., are relevant statutes within the meaning of 5 U.S.C. § 702, and the plaintiffs' interests come within those sought to be protected by the Acts.[9] See Barlow v. Collins, 397 U.S. 159, 167, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

However, the Court's inquiry is not limited solely to § 702. 5 U.S.C. § 701(a) states that "This chapter applies, according to the provisions thereof, except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

In determining the question of standing, "we start with the presumption that aggrieved persons may obtain review of administrative decisions, unless there is 'persuasive reason to believe' that Congress had no such purpose." City of Chicago v. United States, 396 U.S. 162, 164, 90 S.Ct. 309, 311, 24 L.Ed.2d 340 (1969), relying on Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). See also, Tooahnippah v. Hickel, 397 U.S. 598, 606, 90 S.Ct. 1316, 25 L.Ed.2d 600 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

The Supreme Court in Association of Data Processing Service Organizations v. Camp, *supra,* set out a two-prong test in determining the standing issue. "The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." *Id.* at 152, 90 S.Ct. at 829. The plaintiffs clearly satisfy this test. They have alleged not only injury to their personal interest, but also, acting as private attorneys general, injury to the public interest. See Citizens Committee for the Hudson Valley v. Volpe, 425 F.2d 97 (2d Cir. 1970); cert. den. 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970).

Having made the first determination, it is necessary to decide whether the interests sought to be protected by the plaintiffs are arguably within the zone of interests to be protected by the statutes. Association of Data Processing Service Organizations v. Camp, *supra* at 153, 90 S.Ct. 827. They are. Both the National Environmental Policy Act, 42 U.S.C. §§ 4321, 4331 et seq., and the National Historic Preservation Act, 16 U.S.C. § 470 et seq., are designed to foster both improvement and maintenance of areas such as Green Springs, when the national interest is served by so doing. Thus, the plaintiffs have standing to seek judicial review of the appropriation of money by the L.E.A.A. in the instant case. The only prohibitions stated in the Safe Streets Act, 42 U.S.C. § 3701 et seq., have to do with applicants and grantees, 42 U.S.C. §§ 3757–3759, and these sections alone are not enough to preclude judicial review as to all other persons. 5 U.S.C. § 704.

In considering the merits of the plaintiffs' contention, the Court is confronted with the apparent inconsistencies emanating from the Acts under study. Title 16 U.S.C. § 470f, enacted into law in 1966, states the following:

§ *470f. Effect of Federal undertakings upon property listed in the National Register; comment by Advisory Council on Historic Preservation*

The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and

---

8. See, e. g., Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970) where the petitioners were allowed to invoke 5 U.S.C. § 702 with a statute being considered relevant to attack an amendment to a regulation. See also, 5 U.S.C. § 704.

9. See 16 U.S.C. § 470 and 42 U.S.C. §§ 4321, 4331 for declarations of purpose of the Acts.

the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under sections 470i–470n of this title a reasonable opportunity to comment with regard to such undertaking.[10]

The Safe Streets Act was passed by Congress in 1968, and 42 U.S.C. § 3733 provides that "The Administration (L.E.A.A.) shall make grants under this chapter to a State planning agency if such agency has on file with the Administration an approved comprehensive State plan (not more than one year in age) which conforms with the purposes and requirements of this chapter." [11]

Finally, 42 U.S.C. § 4332 of the National Environmental Policy Act, passed in 1970, states that "The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this chapter * * *."

■ Whenever possible it is the duty of the Court to reconcile differences between statutes. Beals v. Hale, 45 U.S. (4 How.) 37, 11 L.Ed. 865 (1846). However, when conflicts cannot be reconciled the last expression of the lawmaker must prevail. See Schick v. United States, 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 (1904). This is because Congress is presumed to know the legislation it has previously approved.

■ The Court is of the opinion that the conflict between 42 U.S.C. § 3733 and 42 U.S.C. § 4332 can be resolved. 42 U.S.C. § 3733 speaks in non-discretionary terms. "The Administration *shall* make grants * * *." (Emphasis added). However, while the Congress did not intend the clause in 42 U.S.C. § 4332, "to the fullest extent possible," to be an escape provision,[12] it is still discretionary. When two statutes of equal efficacy conflict, one non-discretionary and one discretionary, the non-discretionary one must prevail. Thus 42 U.S.C. § 3733 must take precedence over 42 U.S.C. § 4332.[13]

However, both 42 U.S.C. § 3733 and 16 U.S.C. § 470f speak in unequivocal terms. Yet 16 U.S.C. § 470f was passed in 1966 while 42 U.S.C. § 3733 was passed in 1968. Thus, 42 U.S.C. § 3733 must prevail where, as here, the conflicts between the statutes are irreconcilable. See Schick v. United States, *supra*.

An even stronger basis for the Court's holding rests upon the authority of Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Therein it is stated:

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." Unemployment [Compensation] Comm'n. of Territory of Alaska v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136. See also, e. g. Gray v. Pow-

---

10. Boswell's Tavern, in the Green Springs area, was on the National Register at the time of the appropriation by the L.E.A.A. Hawkwood and Westend were later added to the Register.

11. Virginia has filed such a plan.

12. 5, Rep.No. 91–296, 91st Cong., 1st Sess. 9 (1969); Conf.Rep.H.Rep. No. 91–765, 91st Cong., 1st Sess. 9–10 (1969).

13. See also, 42 U.S.C. § 3766(a).

ell, 314 U.S. 402, 62 S.Ct. 326, 86 L. Ed. 301; Universal Battery Co. v. United States, 281 U.S. 580, 583, 50 S.Ct. 422, 74 L.Ed. 1051. "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.'" *Id.* at 16, 85 S.Ct. at 801. See also, Perkins v. Mathews, 400 U.S. 379 at 388, 91 S.Ct. 431 at 437, 27 L.Ed.2d 476 (1971), (Jan. 14, 1971).

■ There can be no doubt that the officials of the L.E.A.A. acted reasonably in approving the grant without first considering 16 U.S.C. § 470f. The terms of 42 U.S.C. § 3733, relating to their particular responsibility, are definite and unequivocal. Upon the filing of an approved comprehensive State plan (not more than one year of age) the Administration *shall* make grants. The terms of the statute leave no discretion to the administration, and it cannot be said that they acted unreasonably in their compliance with those terms, while at the same time finding it unnecessary to look beyond those terms for provisions of other acts that might contradict those same terms.

Furthermore, the officials involved are those with whom the responsibility of making the program of the L.E.A.A. work efficiently and within the intention of Congress lie, and the Act is both relatively untried and new. Therefore, great latitude must be given to their interpretation of the responsibilities, an interpretation which the Court has already stated is reasonable. Udall v. Tallman, *supra.*

Therefore, the defendants Velde and Coster were under no duty to comply with either 16 U.S.C. § 470f or 42 U.S.C. § 4332. The money appropriated under 42 U.S.C. § 3701 et seq., the Safe Streets Act, was done so properly, due to the unequivocal provisions of 42 U.S.C. § 3733, and the motion to enjoin said appropriation must be denied.

The plaintiffs also allege that defendant Brown, in his official capacity, has violated 42 U.S.C. § 1983,[14] jurisdiction being vested in the plaintiffs under 28 U.S.C. § 1343(3). Jurisdiction also lies under 28 U.S.C. § 1331, since the plaintiffs raise a federal question and meet the requirement of jurisdictional amount.

The plaintiffs cite several statutes[15] and the Ninth and Fourteenth Amendments to the Constitution of the United States as bases for their contention.

■ The Court agrees that the statutes cited provide for the preservation and protection of the historic environment[16] and that the amendments cited should not be construed too narrowly so as to preclude their application to certain unenumerated personal rights. See, e. g. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). However, the interest to the State in building the Center on the Purcell tract must also be considered, as well as the State's right to so build.

■ The State does have a legitimate interest in placing the Center on the Purcell tract.[17] But more important to

---

14. § 1983. *Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

15. 16 U.S.C. § 470b; 42 U.S.C. § 4331 (a); 42 U.S.C. § 4331(b) (2), (3), (4).

16. For a review of the entire question, see Note, Toward a Constitutionally Protected Environment, 56 Va.L.Rev. 458 (1970).

17. See fn. 4, *supra.* The Court also deems it significant that even though Mr. Keune

the Court, and whether it agrees with the site selection or not, the State has a right to build the Center on the Purcell tract. The plaintiffs, even when acting in the public interest as private attorneys general, cannot purport to substitute their standard of public need for that lawfully designated to defendant Brown. See, e. g., Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). In effect, the plaintiffs live in a very beautiful area of Virginia, and don't want the area "ruined" by the construction of a large penal facility. Such a concern is understandable, and is not limited to home and land owners in the posture of these plaintiffs. However, such concern is not legally cognizable. The Court is convinced that the defendant Brown has not violated any statutes or Amendments to the Constitution of the United States, and as such the motion to permanently enjoin the building of the Reception and Medical Center on the Purcell tract must also be denied.

An order consistent with this memorandum will be entered.

felt the location of the Center in Green Springs would go toward destroying the area's environment, fn. 3, *supra*, Hawkwood and Westend were still placed on

the National Register after knowledge of the proposed purchase of the Purcell tract.